ORIGINAL

POLLY GATELEY
1515 Nuuanu Ave. #55
Honolulu, Hawaii 96817
Telephone No: (808) 537-5795
FAX:             (808) 521-8861
email: plgateley@hawaii.rr.com

Pro See

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

MAR 12 2007

at ___ o'clock and ___ min. ___ M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| POLLY GATELEY<br>LOREN W. GATELEY,<br>(Deceased April 28, 2006)<br><br>      Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br>TRIPLER ARMY MEDICAL<br>CENTER,<br>Entities 1 - 200<br><br>      Defendants | CIVIL NO: CV07 00131 DAE BMK<br><br>COMPLAINT<br>DEMAND FOR TRIAL BY JUDGE<br>EXHIBITS "A"<br>SUMMONS |

## COMPLAINT

PLAINTIFF, POLLY GATELEY, resides in Honolulu, acting as Pro See, sues the United States of America under the Federal Tort Claims Act, 28 U.S.C.§1346(b)and 28 U.S.C. §2674 and alleges as follows:

### PARTIES

1. Plaintiff, Polly Gateley, resides in Honolulu, Hawaii.

2. Defendant, United States of America, operates a military hospital, Tripler Army Medical Center in Honolulu, Hawaii.

1

## SUBJECT MATTER JURISDICTION

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1346(b) where the claim is made against the United States for Money damages for death caused by the negligent or wrongful acts or omissions or employees of Tripler Army Medical Center, while acting within the scope of their employment, as medical professionals rendering treatment of Plaintiff's decedent husband, Loren W. Gateley.

## VENUE

4. Under 28 U.S.C. §1402(b) a civil action on a tort claim against the United States may be brought in the judicial district where the Plaintiff resides or wherein the act or omission complained of occurred.

Plaintiff, Polly Gateley, resides in Honolulu, Hawaii, therefore, the action is properly brought in the United States District Court, for the District of Hawaii..

## GENERAL ALLEGATIONS

5. On December 16, 2005 Mr. Gateley, was admitted to Tripler Army Medical Center, with a heart attack.

6. He was covered with all sorts of tubes and oxygen. All sorts of reading monitors were reading the results of all these measuring devices.

7. He was in this condition approximately two weeks and was gradually taken off the tubes. Except for Oxygen.

8. His legs were weak and he needed help in and out of his bed. He especially needed help with getting to the portable bathroom pot. He was on approximately 10-12 drugs.

9. He was diagnosed with depression, although he did not appear depressed to me. He spoke with a physiatrist who evidently did not find him depressed.

10. He had continuous vomiting--several times a day. The food was not the best and often times the nurses did not have time to feed him. He had several (6?) (six) lung punctures to drain fluid from his lungs.

11. He was put on a medication Reglan Eq. (Metoclopramide HCl) which was supposed to be given to him approximately 1 (one) hour or more ahead of his meals. This was not done on a regular basis, sometimes the pills (then shots) were given just before the meal. The meal would sit there getting cold, while he was waiting for the medication to take effect

12. I spoke to the doctor on duty to please give him his anti-nausea medication more than an hour before his meals, but this was not always possible.

12a. The reason given was that there was a shortage of staff and that there were many patients to take care of. However, I observed staff sitting at the front stations laughing and joking around. This went on continuously.

13. I would bring him foods from home; shrimp curry, rice, cookies. He drank milk at times. He tried sandwiches and soups. He specially liked tomato soup. I should have attempted to bring him home at approximately this time. But I could not lift him. He had a bowel movement approximately every day. He was given two laxatives.

14. I told the physicians that I did not want Mr. Gateley moved from intensive care, but was told that I had no say in the matter. It definitely would have been cheaper to keep him in intensive care, exercised religiously, than it was to keep him hospitalized for additional time.

14a I requested a bed be brought to our apartment with someone looking in on Mr. Gateley several times a week. Was told this was not possible. That VA takes a long time to accomplish this and payment would take a long time to accomplish also. I am sure that being at home and visiting with his favorite cat would have helped him immensely to want to live.

15. Overtime he gradually lost approximately 40 lbs, and started to get bed sores.

16. He was put on a nose tube which gave him nourishment, but which irritated his throat.

17. He was not given proper exercise. Exercise was supposed to be approximately 20 (twenty) minutes. If he was not feeling well or felt tired, and told the therapist this. The therapist would say they would be back, but they would not come back.

18. He was moved from intensive care to progressive care. He was not monitored as much. The exercise continued at the same sporadic pace. He was not being exercised. He needed to be exercised **every day not once a week**. Or once every two weeks. He needed to be sat up, then stood up, and then gradually use the walker etc. The therapist did not have the patience for this.

The telephones were non existent. Or did not work.

The Bp machines did not work.

The floors are polished to a high shine, but one falls on these floors. The food however, is not good. The same food is served an able bodied patient (i.e. one that has a minor injury) as was some one who had special needs.

The food served at CFA was excellent, with sitting at a dining table. Why couldn't this food be served at Tripler?

**My husband admonished me to not speak out about the way he was being treated. So he suffered in silence. I also suffered in silence.**

19. The inside of his nose was burned. The oxygen dispenser ran out of oxygen and he was left with the equipment running all night. It wasn't until the next day that it was noticed that his nose was burned. He needed to be brought home. He needed a hospital bed and attendants to assist him. This could not be arranged swiftly enough by the hospital.

20. **Then on March 15, 2006 he was administered an overdose of Lasix. (Exhibit A) Obviously this was a massive overdose of this drug. His blood pressure plummeted to the 30's and 40's. I was called and told he was failing. Even though the previous day he was ok. By the time I arrived there they had restored his blood pressure to 100's. He was on all sorts of tubes again. He was in intensive care. He was trembling violently. As I looked in the room it appeared he was sheltering his face and eyes. His outlook changed from that time on. He gradually went down hill. His legs were now almost impossible to hold him up. Each day without exercise he went backwards.**

21. A nurse (female large) moved him around his bed and would thump him down on the bed like a sack of potatoes. I cautioned her on this. If she treated him this way

while I was there, how would she be treating him when I was not there? Ordinarily two people were required to move the patient. She took it upon herself to move him by herself.

22. He was finally moved to telemetry. He was supposed to be monitored and exercised. However, none of this was done. He was moved to a room closer to the nurses station, the shades were drawn. No sunlight came in the room.

23. He was then moved to CFA. Why was he moved to CFA, close to death, rather than being moved there when he was in reasonably good health and could be exercised. He was already in the throes of dying although I did not know this. An exercise person came one day. Loren was coughing. He had taken a drink of water, with the bed in a flat position. He was coughing. The therapist said he would return later and never did return for the month that Mr. Gateley was there.

24. On the last night of his passing, I sat with him and held his hand for two hours. He had long stopped being taken to the dinning area. The next morning a nurse called and said that he had been having difficulty breathing and had been given a face mask. Later he died. I figured he had another 10 - 15 years more of living to do. I miss him terribly.

## CHOICE OF LAW-HAWAII

Pursuant to U.S.C.§2674 the United States is liable for money damages for death caused by the negligent act or omission of employees of the government while acting within the scope of their employment, under circumstances where the United States, if a

private person, would be liable to the Plaintiff in accordance with the law of the place where the act or omission occurred.

Since the malpractice was committed upon the Plaintiff's decedent spouse in Honolulu, Hawaii at the Tripler Army Medical Center, Hawaii law applies.

Pursuant to Hawaii Revised Statues Annotated 633-5: <u>Death by wrongful act</u>; the decedent's legal representative, or any of the persons enumerated in subsection (b) may maintain an action against the person causing the death or against the person responsible for the death.

Hawaii Revised Statutes Annotated Section 663-(5) provides that the spouse of the decedent may pursue a claim for the loss of love and affection of her husband including the loss of society, companionship, comfort, consortium or protection.

### COUNT I

### MEDICAL NEGLIGENCE COMMITTED BY TRIPLER ARMY MEDICAL CENTER RESULTING IN THE PLAINTIFF, POLLY GATELEY'S HUSBAND, LOREN W. GATELEYS' DEATH

Plaintiff, Polly Gateley, re-alleges paragraphs 1 through 24 as if fully set forth herein and Defendant, Tripler Army Medical Center, by and through its agent, employees, and servants, including, but not limited to, Dr. Luu, Dr. John Marshall James E. Boyer, exercise therapists, dietitians.

Not withstanding this duty, defendant, Tripler Army Hospital Medical Center, by and through the above-named employees, breached their duty in the following ways:

    A.    Failed to administer the anti-nausea medication one or more hours ahead of his meals.

B. Failed to give him food that was palatable.

C. Failed to give him proper exercise.

D. Gave him an overdose of Lasix which plummeted his blood pressure into the 30's and 40's.

E. As a direct and proximate result of the foregoing negligent acts of Defendant, Tripler Army Medical Center, by and through Dr. Luu, Dr. John Marshall James E. Boyer, exercise therapists, dietitians and others, the decedent, Loren W. Gateley, experienced mental anguish for the approximate 5 (five) months he was at Tripler Army Medical Center, leading to his death on April 28, 2006, and the Plaintiff Polly Gateley, suffered the following damages:

A. Loss of love and affection of her husband, including but not limited to, loss of society; companionship, consortium, comfort or protection.

WHEREFORE, Plaintiff, Polly Gateley, demands judgment against United States of America for the following:

a. Five Million Dollars ($5,000,000.00);

b. Cost of suit;

c. All the relief this Court deems just and proper.

## COUNT II

### PLAINTIFF, POLLY GATELEY'S CLAIM OF NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS CAUSED BY TRIPLER ARMY MEDICAL CENTER'S MEDICAL MALPRACTICE

Plaintiff, Polly Gateley, adopts and re-alleges paragraphs 1 through 24 as if fully set forth herein.

--- Plaintiff, Polly Gateley, has suffered the negligent infliction of emotional distress as a result of Defendant, Tripler Army Medical Center/United States of America's negligence as described above, wherein Plaintiff, Polly Gateley was caused to see her husband in a debilitated state at Tripler Army Medical Center. On April 28, 2006 when she learned her husband had passed away.

--- As a direct and proximate result of Defendant, United States of America's negligent treatment of the Plaintiff's husband as alleged above, the United States of American committed the tort of negligent infliction of emotional distress causing Plaintiff, Polly Gateley, to suffer mental anguish in the past, and suffer same into the future.

WHEREFORE, Plaintiff, Polly Gateley, demands damages against United States of America for the following:

a. $5,000,000.00;

b. Cost of suit;

c. All the relief this Court deems just and proper

*Polly Gateley* (signature)
Polly Gateley
1515 Nuuanu Ave. #55
Honolulu, Hawaiii 96817
(808) 537-5795

Attorney Pro See

Next of Kin:

Linda Nichols
Box 23
Madeira Park, B.C.
VON 2H0  CANADA